UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT H. ANTHONY, JR., Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | |
| CADENCE BANCORPORATION, PAUL B. MURPHY, and VALERIE C. TOALSON, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

Plaintiff Robert H. Anthony, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Cadence Bancorporation ("Cadence" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Cadence; and (c) review of other publicly available information concerning Cadence.

## <u>NATURE OF THE ACTION AND OVERVIEW</u>

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Cadence securities between July 23, 2018 and July 22, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Cadence is a financial holding company that focuses on middle-market commercial lending, complemented by retail banking and wealth management services, and purportedly provides banking services to businesses, high net worth individuals, and business owners.

3.      On July 22, 2019, the Company disclosed that "higher credit costs including net charge-offs of $18.6 million and loan provisions of $28.9 million" negatively impacted its second quarter 2019 financial results.

4.      On this news, the Company's stock price fell $3.75 per share, or over 19%, to close at $15.86 per share on July 22, 2019, thereby injuring investors.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) the Company lacked adequate internal controls to assess credit risk; (ii) as a result, certain of the Company's loans posed an increased risk of loss; (iii) as a result, the Company was reasonably likely to incur significant losses for certain loans; (iv) the Company's financial results would suffer a material adverse impact; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this District.

3

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased Cadence securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Cadence is incorporated under the laws of Delaware with its principal executive offices located in Houston, Texas.  Cadence securities trade on the New York Stock Exchange ("NYSE") under the symbol "CADE."

13.     Defendant Paul B. Murphy ("Murphy") was the Chief Executive Officer of the Company at all relevant times.

14.     Defendant Valerie C. Toalson ("Toalson") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

15.     Defendants Murphy and Toalson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew

that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Cadence is a financial holding company that focuses on middle-market commercial lending, complemented by retail banking and wealth management services, and purportedly provides banking services to businesses, high net worth individuals, and business owners.

### Materially False and Misleading
### Statements Issued During the Class Period

17.    The Class Period begins on July 23, 2018.  On that day, Cadence announced its second quarter 2018 financial results in a press release, stating in relevant part:

Highlights:

- Second quarter of 2018 net income was $48.0 million, representing an increase of $9.1 million, or 23.6%, compared to the first quarter of 2018 and an increase of $19.0 million, or 65.6%, compared to second quarter of 2017.

* * *

- Loans were $9.0 billion as of June 30, 2018, an increase of $328.8 million, or 3.8%, as compared to $8.6 billion at March 31, 2018, and an increase of $1.3 billion, or 16.3%, as compared to $7.7 billion at June 30, 2017.

- Core deposits (total deposits excluding brokered) were $8.7 billion as of June 30, 2018, up $451.1 million, or 5.5%, from March 31, 2018, and up $1.5 billion, or 20.8%, from June 30, 2017.

- Total revenue for the second quarter of 2018 was $120.1 million, up 3.4% from the linked quarter and up 13.9% from the same period in 2017 driven by strong loan, core deposit, and spread income growth due to a favorably positioned, asset-sensitive balance sheet benefiting from rising short-term rates.

18.     On August 13, 2018, Cadence filed its Quarterly Report on Form 10-Q for the period ended June 30, 2018, affirming the previously reported financial results.  Moreover, the report described the Company's allowance for credit losses ("ACL"), stating in relevant part:

> Total ACL for the period ending June 30, 2018 was $90.6 million, or 1.01% of total loans (net of unearned discounts and fees) of $9.0 billion. This compares with $87.6 million, or 1.06% of total loans of $8.25 billion at December 31, 2017.

19.     On October 22, 2018, Cadence announced its third quarter 2018 financial results in a press release, stating in relevant part:

- Third quarter of 2018 net income was $47.1 million, representing strong overall business performance and an increase of $14.5 million, or 44.5%, compared to third quarter of 2017, and a decrease of $0.8 million, or 1.7% compared to the second quarter of 2018 due to second quarter's income being impacted favorably by non-routine items[2] including the gain on sale of the insurance subsidiary and a discrete tax deduction.

* * *

- Cadence continued to demonstrate its strong business development with loan growth ending the quarter at $9.4 billion as of September 30, 2018, an increase of $1.4 billion, or 17.6%, since September 30, 2017, and an increase of $468.1 million, or 5.2%, since June 30, 2018.

- Core deposits (total deposits excluding brokered) reflected solid growth at $8.8 billion as of September 30, 2018, up $1.2 billion, or 15.0%, from September 30, 2017, and up $252.2 million, or 2.9%, from June 30, 2018. Brokered deposits decreased $97.8 million or 11.9% from September 30, 2017 and decreased $25.0 million from June 30, 2018.

- Credit remained solid during the quarter, and loan loss provisions included a reversal of ($1.4) million for the third quarter of 2018 as compared to a provision of $1.7 million in the prior year's quarter and $1.3 million in the linked quarter. Continued improvement in the energy sector and that impact on the performance of our energy credits affected the loan provision reversal in the third quarter of 2018, as well as, refinement of our portfolio loss rates amid an overall stable credit backdrop. These combined factors more than offset loan provisions associated with the third quarter net loan growth.

20.     On November 14, 2018, Cadence filed its Quarterly Report on Form 10-Q for the period ended September 30, 2018, affirming the previously reported financial results.  Moreover,

the report stated that "Total ACL for the period ending September 30, 2018 was $86.2 million, or

0.91% of total loans (net of unearned discounts and fees) of $9.44 billion."

21.     On January 28, 2019, Cadence announced its full year fiscal 2018 financial results

in a press release stating, in relevant part:

- 2018 net income was $166.3 million, up meaningfully from $102.4 million
  for 2017. Fourth quarter of 2018 net income was $32.3 million, an increase of
  $17.6 million compared to fourth quarter of 2017, representing strong overall
  business performance, and a decrease of $14.8 million compared to the third
  quarter of 2018 due to non-routine expenses[2] and increased loan loss
  provisions in the fourth quarter of 2018. Adjusted net income was $174.8
  million[1] for 2018, up from $123.3 million for 2017. Fourth quarter of 2018
  adjusted net income was $41.5 million[1], an increase of $5.2 million
  compared to the fourth quarter of 2017 and a decrease of $7.8 million
  compared to the third quarter of 2018 due to increased loan provisions in the
  fourth quarter of 2018.

* * *

- Credit remains solid, with net charge-offs of six basis points for both 2018
  and 2017, and 1 basis point in the fourth quarter of 2018.

22.     22.     On March 1, 2019, Cadence filed its Annual Report on Form 10-K for the

period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial

results.  Regarding managing credit risks, under "Risk Factors," the Company stated, in relevant

part:

**Our business depends on our ability to successfully manage credit risk.**

Our business depends on our ability to successfully measure and manage credit
risk. As a lender, we are exposed to the risk that the principal of, or interest on, a
loan will not be repaid timely or at all or that the value of any collateral supporting
a loan will be insufficient to cover our outstanding exposure. In addition, we are
exposed to risks with respect to the period of time over which the loan may be
repaid, risks relating to proper loan underwriting, risks resulting from changes in
economic and industry conditions, and risks inherent in dealing with individual
loans and borrowers. The creditworthiness of a borrower is affected by many
factors including local market conditions and general economic conditions. If the
overall economic climate in the United States, generally, or our market areas,
specifically, experiences material disruption, our borrowers may experience
difficulties in repaying their loans, the collateral we hold may decrease in value or

become illiquid, and the level of nonperforming loans, charge-offs and delinquencies could rise and require significant additional provisions for credit losses. Additional factors related to the credit quality of commercial loans include the quality of the management of the business and the borrower's ability both to properly evaluate changes in the supply and demand characteristics affecting our market for products and services and to effectively respond to those changes. Additional factors related to the credit quality of commercial real estate loans include tenant vacancy rates and the quality of management of the property.

Our risk management practices, such as monitoring the concentration of our loans within specific industries and our credit approval, review and administrative practices, may not adequately reduce credit risk, and our credit administration personnel, policies and procedures may not adequately adapt to changes in economic or any other conditions affecting customers and the quality of the loan portfolio. Many of our loans are made to small and medium-sized businesses that are less able to withstand competitive, economic and financial pressures than larger borrowers. Consequently, we may have significant exposure if any of these borrowers becomes unable to pay their loan obligations as a result of economic or market conditions, or personal circumstances, such as divorce or death. A failure to effectively measure and limit the credit risk associated with our loan portfolio may result in loan defaults, foreclosures and additional charge-offs, and may necessitate that we significantly increase our allowance for credit losses ("ACL"), each of which could adversely affect our net income. As a result, our inability to successfully manage credit risk could have a material adverse effect on our business, financial condition and results of operations.

Plainly, the foregoing risk warning was a generic "catch-all" provision that was not tailored to

Cadence's actual known credit risk.

23.   Moreover, regarding potential losses to the loan portfolio, the 2018 10-K stated,

in relevant part:

**Our ACL may prove to be insufficient to absorb potential losses in our loan portfolio, which may adversely affect our business, financial condition and results of operations.**

As a lender, we are exposed to the risk that our customers will be unable to repay their loans in accordance with their terms and that any collateral securing the payment of their loans may not be sufficient to assure repayment. Credit losses are inherent in the business of making loans and could have a material adverse effect on our operating results. We have established our ACL and maintain it at a level considered adequate by management to absorb probable credit losses based on our analysis of the quality of our loan portfolio, market environment and other factors we deem to be relevant to this analysis. The ACL represents our estimate of probable losses in the portfolio at each balance sheet date and is based upon

relevant information available to us. The allowance contains provisions for probable losses that have been identified relating to specific borrowing relationships, as well as probable losses inherent in the loan portfolio and credit undertakings that are not specifically identified. Additions to the ACL, which are charged to earnings through the provision for credit losses, are determined based on a variety of factors, including an analysis of the loan portfolio, historical loss experience and an evaluation of current economic conditions in our market areas. The determination of the appropriate level of the ACL inherently involves a high degree of subjectivity and requires us to make significant estimates of current credit risks and future trends, all of which may undergo material changes. Although our management has established an ACL it believes is adequate to absorb probable and reasonably estimable losses in our loan portfolio, the allowance may not be adequate. We could sustain credit losses that are significantly higher than the amount of our ACL. Higher credit losses could arise for a variety of reasons, including changes in economic, operating and other conditions within our markets, as well as changes in the financial condition, cash flows, and operations of our borrowers.

As of December 31, 2018, our ACL as a percentage of total loans was 0.94% and as a percentage of total nonperforming loans was 127.12%. Additional credit losses will likely occur in the future and may occur at a rate greater than we have previously experienced. We may be required to take additional provisions for credit losses in the future to further supplement the ACL, either due to management's decision to do so or requirements by our banking regulators. In addition, bank regulatory agencies will periodically review our ACL, the policies and procedures we use to determine the level of the allowance and the value attributed to nonperforming loans or to real estate acquired through foreclosure. Such regulatory agencies may require us to recognize future charge-offs. In addition, in June 2016, the Financial Accounting Standards Board issued a new accounting standard, Current Expected Credit Losses ("CECL"), that will replace the current approach under generally accepted accounting principles (GAAP) for establishing allowances for credit losses, which generally considers only past event and current conditions. CECL is a forward-looking methodology that reflects the expected credit losses over the lives of financial assets, starting when such assets are first acquired. Under the revised methodology, credit losses will be measured based on past events, current conditions and reasonable and supportable forecasts that affect the collectability of financial assets. The standard is expected to result in increases to allowance levels generally and will require the application of the revised methodology to existing financial assets through a one-time adjustment to retained earnings upon initial effectiveness. The standard will be effective for us in 2020. See "Notes to Consolidated Financial Statements—Note 1—Summary of Accounting Policies—Pending Accounting Pronouncements" for additional information about the standard. Any increases in the ACL will result in a decrease in net income and, if the increases reduce retained earnings and capital, it could have a material adverse effect on our business, financial condition and results of operations.

Plainly, this risk warning, too, was a generic "catch-all" provision—one that was not tailored to Cadence's actual known ACL risk.

24.     On April 29, 2019, Cadence announced its first quarter 2019 financial results in a press release stating, in relevant part:

- Adjusted net income[1], excluding non-routine income and expenses[2] primarily related to the merger, was $75.0 million for the first quarter of 2019, an increase of $33.0 million or 79% compared to the first quarter of 2018 and an increase of $33.5 million or 81% compared to the fourth quarter of 2018.

- Adjusted EPS[1] for the first quarter of 2019 of $0.57 increased $0.07 compared to adjusted EPS for both the prior year and linked quarters of $0.50.

25.     On May 10, 2019, Cadence filed its Quarterly Report on Form 10-Q for the period ended March 31, 2019, affirming the previously reported financial results.   In addition, it reported total ACL of $105.04 million.

26.     The above statements identified in ¶¶ 17-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors that: (i) the Company lacked adequate internal controls to assess credit risk; (ii) as a result, certain of the Company's loans posed an increased risk of loss; (iii) as a result, the Company was reasonably likely to incur significant losses for certain loans; (iv) the Company's financial results would suffer a material adverse impact; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

27.     On July 22, 2019, Cadence disclosed that "higher credit costs including net charge-offs of $18.6 million and loan provisions of $28.9 million" negatively impacted its second quarter 2019 financial results. In a press release, the Company stated, in relevant part:

> Cadence Bancorporation (NYSE:CADE) ("Cadence") today announced net income for the quarter ended June 30, 2019 of $48.3 million, or $0.37 per diluted common share ("per share"), compared to $48.0 million or $0.57 per share for the quarter ended June 30, 2018, and $58.2 million or $0.44 per share for the quarter ended March 31, 2019. The first and second quarters of 2019 included merger related expenses of $22.0 million or $0.13 per share and $4.6 million or $0.03 per share, respectively.

> The results for second quarter of 2019 reflect continued organic loan and deposit growth and solid fundamental trends, that were unfortunately negatively impacted by higher credit costs including net charge-offs of $18.6 million and loan provisions of $28.9 million. While the credit results are certainly disappointing, there have been many positive developments this year that add further strength to our platform. As a reminder, in the first quarter of 2019, we meaningfully diversified assets and deposits with the State Bank & Trust ("State Bank") merger and protected our interest income with the addition of a well-timed interest rate collar. This quarter, we sold non-strategic acquired loans and grew originated loans 4.0% year-to-date, reflecting an intentional moderation of growth compared to prior years. Additionally, we further lowered our use of wholesale funding and enhanced our capital base while lowering ongoing debt as we refinanced senior debt with sub-debt on attractive terms. Our tangible book value per share increased over 7% from last quarter to $14.21. The State Bank merger integration continues to progress well on all fronts, and we are encouraged by our prospects to grow this core business throughout Georgia. We continue to focus on building our quality growth throughout our regional markets, while investing in scalable infrastructure to support ongoing customer service and profitable growth. Looking forward, we believe the cumulative effect of these actions position Cadence well for future success," stated Paul B. Murphy, Jr., Chairman and Chief Executive Officer of Cadence Bancorporation.

> Adjusted Performance Metrics:

> - Adjusted net income[1], excluding non-routine income and expenses[2] primarily related to the merger, was $51.5 million for the second quarter of 2019, an increase of $9.3 million or 22.2% compared to the second quarter of 2018 and a decrease of $24.0 million or 31.8% compared to the first quarter of 2019.

- Adjusted EPS[1] for the second quarter of 2019 of $0.40 decreased by $0.10 compared to adjusted EPS for the prior year quarter of $0.50 and decreased by $0.18 for the linked quarter of $0.58.

28.     On this news, Cadence's stock price fell $3.75 per share, or over 19%, to close at $15.86 per share on July 22, 2019, thereby injuring investors.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Cadence securities between July 23, 2018 and July 22, 2019, inclusive, and who were damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Cadence's securities actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.   Millions of Cadence securities were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Cadence or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Cadence; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

35.     The market for Cadence's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Cadence's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Cadence's securities

relying upon the integrity of the market price of the Company's securities and market information relating to Cadence, and have been damaged thereby.

36.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Cadence's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Cadence's business, operations, and prospects as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause, of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Cadence's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

38.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.     During the Class Period, Plaintiff and the Class purchased Cadence's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.     As alleged herein, Defendants acted with scienter because Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Cadence, their control over, and/or receipt and/or modification of Cadence's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Cadence, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.     The market for Cadence's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Cadence's securities traded at artificially inflated prices during the Class Period.  On August 22, 2018, the Company's share price closed at a Class Period high of $28.85 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's

securities relying upon the integrity of the market price of Cadence's securities and market information relating to Cadence, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of Cadence's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint, causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Cadence's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Cadence and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Cadence's securities was an efficient market for the following reasons, among others:

(a)     Cadence shares met the requirements for listing and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Cadence filed periodic public reports with the SEC and/or the NYSE;

(c)     Cadence regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Cadence was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Cadence's securities promptly digested current information regarding Cadence from all publicly available sources and reflected such information in Cadence's share price.   Under these circumstances, all purchasers of Cadence's securities during the Class Period suffered similar injury through their purchase of Cadence's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.   In addition, to the extent certain of the statements alleged to be false may be

characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Cadence who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Cadence's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

maintain artificially high market prices for Cadence's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce, and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Cadence's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Cadence's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Cadence and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets,

plans, projections, and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Cadence's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Cadence's securities was artificially inflated during the Class Period.   In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information

that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Cadence's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Cadence was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Cadence securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Cadence within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the

Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Cadence and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  October 30, 2019

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
(S.D. Tex. Federal Bar Number 1466757)
J. Alexander Hood II
(S.D. Tex. Federal Bar Number 3086579)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

23

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, __Robert H. Anthony, Jr._____ , make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Cadence Bancorporation ("Cadence" or the "Company")

and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Cadence securities at the direction of plaintiffs counsel, or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a class of investors who purchased or

acquired Cadence securities during the class period, including providing testimony at deposition and trial, if

necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this

action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Cadence

securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as

set forth in the Complaint, beyond my pro-rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Executed** <u>  10 - 3 - 2019          </u>
           **(Date)**


<u>                                         </u>
           **(Signature)**

<u>Robert  H.  Anthony, Jr.</u>
           **(Type or Print Name)**

**Cadence Bancorporation (CADE)**                                          **Anthony, Robert H.**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 1/4/2019 | Purchase | 1,739 | $16.8500 |
| 3/15/2019 | Purchase | 15.17 | $20.0616 |
| 6/14/2019 | Purchase | 15.42 | $19.9056 |